IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JON BURNIGHT,

Petitioner,

No. CIV S-05-2019 MCE GGH P

vs.

T. CAREY, et al.,

Respondents.

FINDINGS AND RECOMMENDATIONS

_________________________________/

I. Introduction

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1993 petitioner was convicted of second degree murder and sentenced to 15 years to life. The instant petition challenges the 2002 decision by the California Board of Parole Hearings (BPH) finding petitioner unsuitable for parole. This was petitioner's second subsequent suitability hearing.

Petitioner raises seven grounds for relief: 1) insufficient evidence to support the decision finding him unsuitable; 2) violation of Cal. Penal Code § 3041; 3) illegal no-parole policy; 4) parole statute and regulation unconstitutionally vague; 5) double jeopardy; 6) biased panel; and 7) violation of plea agreement.

\\\\\

After carefully considering the record, the court recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The reasoned opinion by the Alameda County Superior Court denying the habeas corpus petition raising the claims raised in the instant action addressed only petitioner's claim alleging insufficient evidence. Answer, Exhibit 4. The California Court of Appeal and California Supreme Court summarily denied petitioner's habeas corpus petitions. Id., Exhibits 5, 6. Accordingly, the court considers whether the Superior Court's denial of petitioner's claim alleging insufficient evidence was an unreasonable application of clearly established Supreme

Court authority. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision). Because petitioner's other claims were summarily denied, the court will independently review the record to determine whether the denial of these claims was an unreasonable application of clearly established Supreme Court authority.

III. Discussion

      A. Insufficient Evidence (Ground Six)

In ground six, petitioner argues that he should be deemed presumptively suitable for parole release. The gravamen of ground six is the claim that the 2002 decision finding him unsuitable for parole was not supported by sufficient evidence. The facts of the offense are summarized in the probation report:

> Early on the morning of June 30, 1989, the defendant went to the home of his friend, the victim, Steve Zeehandelaar. The defendant had with him a shotgun belonging to his grandfather. About a month before the incident, the defendant had sawed off the barrel of the shotgun. According to information from the defendant's girlfriend and defendant's grandmother, the defendant had gone to the victim's home to confront the victim about misinformation that the victim had presented to the girlfriend. The victim lived about one and one-half blocks away from the defendant who walked to the home. The defendant put the gun in some bushes in front of the victim's house and then went to the front door where the victim answered the door and the defendant spoke with him. The defendant and victim argued. The defendant went back to the bushes and picked up the double barrel shotgun and returning to the front door, shot one round directly into the victim's throat. The shotgun was apparently touching the victim's neck at the time it fired. The victim's brother approached the front door and saw the defendant standing over the victim's body. The defendant ran to his girlfriend's house, told her what he had done, drove to Santa Rita, crashing into a post just outside the office and told the deputies that he had just shot somebody. The victim was declared dead upon arrival at Eden Hospital.

Answer, Exhibit 3.

The BPH relied on unchanging factors regarding the commitment offense to find petitioner unsuitable for parole: the offense was carried out in a dispassionate and calculated manner, the offense demonstrated a callous disregard for human suffering and the motive for the crime was inexplicable or trivial. Answer, Exhibit 2, p. 54. Petitioner argues that the BPH's

reliance on these unchanging factors to find him unsuitable violated his right to due process.

Due process requires that the BPH's decision finding a prisoner unsuitable for parole must be supported by "some evidence." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (2006). In an order filed June 1, 2007, in Bulpitt v. Mendoza-Powers, et al., CIV S-06-0566 MCE GGH P, Judge England considered the BPH's reliance on unchanging factors, as in the instant case, to find a prisoner unsuitable for parole. Judge England found that a state court decision upholding the BPH's use of immutable evidence, such as the circumstances of the offense, to support a denial of parole is not an unreasonable application of the "some evidence" standard. CIV S-06-0566 MCE GGH P, June 1, 2007, order, p. 4: 16-18. Judge England found that as the Ninth Circuit Court of Appeals stated in Sass, supra, and recently reiterated in Irons v. Carey, No. 05-15275, 2007 WL 2027359 (9th Cir. July 13, 2007), a finding of unsuitability based on immutable factors that occurred decades ago when all other factors point to suitability is sufficient to constitute "some evidence" on which the petitioner can be found unsuitable for parole. Id. [1]

Pursuant to Judge England's order in Bulpitt, supra, the court finds that the Superior Court's decision that sufficient evidence supported the BPH's 2004 decision finding petitioner unsuitable for parole was not an unreasonable application of clearly established Supreme Court authority.

B. Section 3041 (Ground One)

Petitioner argues that Cal. Penal Code § 3041 requires the BPH to give him a parole date. Petition, p. 7(a).

---

[1] Of course, the conclusion regarding the unchangeable factors, here that the murder was calculated, demonstrated a callous disregard for human suffering and was based on a trivial motive, as found by the BPT, and later explicitly or implicitly by the state courts in the exhaustion process, itself must be reasonable. See Answer, Exhibit 2, p. 54 (BPH decision). However, unless the conclusion is based on fabricated facts, or is otherwise irrational under the accepted facts, the conclusion will be "reasonable." Here, there is not any doubt from the facts, that the murder was calculated, demonstrated a callous disregard for human suffering and was based on a trivial motive. Answer, Exhibit 3.

Cal. Penal Code § 3041 provides that one year prior to the inmate's minimum eligible parole release date, a panel consisting of at least two commissioners of the BPH shall meet with the inmate and *shall normally* set a parole release date. Petitioner appears to argue that because § 3041 provide that the BPH shall normally set parole release dates, the BPH violated due process by failing to set his parole release date.

California's parole scheme gives rise to a cognizable liberty interest in release on parole. Irons v. Carey, supra. As stated above, due process requires that the BPH's decision finding a prisoner unsuitable for parole must be supported by "some evidence." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (2006). If there is not some evidence to support a decision denying parole, due process is violated. Therefore, even though California law states that the BPH shall normally set parole release dates, due process does not require the BPH to state a date where some evidence exists demonstrating that petitioner should not be paroled. As discussed above, some evidence exists demonstrating that petitioner should not be paroled. Accordingly, petitioner's claim that that BPH was required to set his parole release date pursuant to Cal. Penal Code § 3041 is without merit.

After independently reviewing the record, the court finds that the denial of this claim by the state courts was not an unreasonable application of clearly established Supreme Court authority.

C. No-Parole Policy (Ground Two)

Petitioner argues that he has been denied parole pursuant to a no-parole policy. In his traverse, petitioner cites Coleman v. Board of Prison Terms, CIV S-96-0783 LKK PAN P in support of this claim. In Coleman, the Honorable Lawrence K. Karlton found that under Governors Wilson and Davis, the BPH disregarded regulations ensuring fair suitability hearings and instead operated under a sub rosa policy that all murderers be found unsuitable for parole. See December 22, 2004, findings and recommendations, adopted by the district court on December 2, 2005.

Petitioner's assertion of a "no parole" policy in 2002 raises profoundly complex issues in light of the Findings and Recommendations/Order of Adoption/Judgment in Coleman v. Board of Prison Terms, CIV-S-96-0783 LKK PAN P, appeal pending.  In Coleman, the court found that a no parole policy was in effect for California "lifers" in 1999 which infected Coleman's BPT proceeding in 1999.  Coleman rejected the BPT's "so what" assertion that the presence of some evidence would ameliorate the policy because Coleman properly found a biased decision maker to be structural error not susceptible to a harmless error standard.  The remedy in Coleman required that petitioner be given a new hearing before an unbiased panel of BPH commissioners.

Complex issues abound insofar as Coleman is urged by petitioner as applicable to his 2002 BPH hearing.  Some of those issues are as follows: (1) was the holding in Coleman applicable to *all* BPH panels or just the panel at issue in Coleman; (2) how does one reconcile state court holdings contrary to Coleman ,which are also entitled to res judicata/collateral estoppel effect in federal court; (3) did petitioner waive his objection to a no parole policy occasioned by biased BPH panel members when he expressly "temporarily" waived his bias objection when proceeding before the panel; (4) what is the effect of Coleman in this case where the BPH commissioners *expressly* disavowed that any "no parole" policy would motivate their decision.  There may be other issues upon further reflection.  However, in this case the complexity of the trees (issues) admit to a rather easy decision in respect to the forest – which has the effect of mooting the "no parole" policy issue.  The solution hinges upon the appropriate remedy even if the petition were to be granted in this case on the "no parole" policy.

In Coleman, the appropriate remedy given was an order that Coleman receive a hearing before unbiased commissioners.  As Judge Karlton noted in a follow-up order in Coleman when denying petitioner's request for immediate release, the fact that Coleman had a hearing in 2005 more or less obviated the structural error found for the 1999 hearing.  That is, Judge Karlton found that no evidence had been presented to suggest that the 2005 BPT panel was

affected by a no parole policy. In late 2003, a new Governor had been elected in the latter part of 2004 for whom the record was silent with respect to an enunciated "no parole" policy. Petitioner had received, in effect, the remedy ordered by the initial decision – a hearing from a panel unaffected by the found "no parole" policy – or at least there was no evidence to suggest that the 2005 panel was biased.

In this case, as far as the record demonstrates, petitioner had a parole eligibility hearing in 2004, as the 2002 decision was a two-year denial. It is highly likely that petitioner has had another eligibility hearing since 2004. There is no indication that any 2004 panel would be affected by a historical "no parole" policy assertedly instituted by two previous governors. Thus, the only remedy to be ordered here based on a "no parole" policy in 2002 is for petitioner to have another parole eligibility hearing, a remedy he has already received.

After independently reviewing the record, the court finds that the denial of this claim by the state courts was not an unreasonable application of clearly established Supreme Court authority.

D. Parole Statute and Regulations Unconstitutionally Vague (Ground Three)

Petitioner appears to argue that Cal. Penal Code § 3041(b) and Cal. Code Regs. tit. 15, § 2402(a) are unconstitutionally vague. The section of the petition addressing this claim mentions other legal claims, such as the BPH's continuing reliance on unchanging factors to find petitioner unsuitable for parole. See Petition, p. 8(j). Despite mention of other legal theories, it appears that petitioner intended ground three to challenge § 3041(b) and § 2402(a) as unconstitutionally vague terms.

Section 3041(b) provides, in relevant part, that the BPH shall set a parole release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration.

\\\\\

In compliance with the statutory mandate, the Board of Prison Terms issued regulations which guide it in finding prisoners convicted of life offenses with parole eligibility for parole setting.  Cal. Code Regs. tit. 15, § 2402 sets forth the criteria for determining whether an inmate is suitable for parole.  Section 2402(a) provides that regardless of the length of time served, a prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

Petitioner argues that § 3041(b) and § 2402(a) are standardless and allow the BPH to use unlimited criteria in deciding whether a prisoner is parole suitable.  Petitioner argues that "unreasonable risk of danger to society" contained in § 2402(a) and "public safety" contained in § 3041(b) are unconstitutionally vague.

Where speech is not the explicit subject of a statute or regulation and is not otherwise implicated in the case, and if related constitutional rights are not expressly invoked in a challenge to facial validity, the court need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute or regulation, the conduct in question is prohibited.  U.S. v. Hogue, 752 F.2d 1503, 1504 (9th Cir. 1985).  Under these principles, the court does not address whether the prohibition before us may be vague or overbroad in its other potential applications.  Id.  A criminal sanction is not vague if it provides fair notice of the conduct proscribed.  Id.  A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the rule in question.  Id.

In contrast, facial vagueness challenges are appropriate if the statute clearly implicates free speech rights.  Foti v. City of Menlo Park, 146 F.3d 629, 639 n. 10 (9th Cir. 1998); see also Roulette v. City of Seattle, 97 F.3d 300, 305 (9th Cir. 1996) (facial attack proper if the challenged statute "is directed narrowly and specifically at expression or conduct commonly associated with expression").

\\\\\

In the instant case, the court does not find that § 3041(b) and § 2402(a) clearly implicate free speech rights or are narrowly and specifically directed at expression or conduct commonly associated with expression. Accordingly, the court considers whether a reasonable person of ordinary intelligence would understand the standards for parole eligibility as discussed in § 3041(b) and § 2402(a).

Petitioner's attack on these two sections is taken out of context, because it ignores section Cal. Code Regs. tit. 15, § 2402(c) which sets forth the circumstances tending to show unsuitability. The court lists those of significance here:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style manner.
>
> (C) The victim was abused, defiled or mutilated during or after the offense.
>
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Section 2402(d) sets forth the circumstances tending to indicate suitability:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to the victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for the Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome . . .

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

The factors set forth in § 2402(c) set forth the standards by which the BPH determines whether the timing and gravity of the current offense is such that consideration of public safety requires a more lengthy period of incarceration. The BPH also uses these factors to determine whether the prisoner would pose an unreasonable risk of danger to society if released from prison. Reading § 3041(b) and § 2402(a) and (c) together, the court finds that a reasonable person of ordinary intelligence would understand the standards for parole eligibility.[2]

/////

---

[2] Vagueness is a different issue from whether use of unchanging historical factors, e.g., severity of the crime, constitute "some evidence" in a due process analysis.


After independently reviewing the record, the court finds that the denial of this claim by the state courts was not an unreasonable application of clearly established Supreme Court authority.

E. Double Jeopardy (Ground 4)

Petitioner argues that the BPH found him unsuitable for parole by treating his second degree murder conviction as a first degree murder conviction, in violation of the Double Jeopardy Clause.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the state through the Fourteenth Amendment, guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The provision protects against a second prosecution for the same offense and multiple punishments for the same offense. Witte v. United States, 515 U.S. 389, 396, 115 S.Ct. 2199 (1995); United States v. Wolfswinkel, 44 F.3d 782, 784 (9th Cir. 1995). Because parole is part of the original sentence, decisions concerning parole do not constitute multiple punishments for the original offense. See United States v. Brown, 59 F.3d 102, 104-105 (9th Cir. 1995) (per curiam).

After independently reviewing the record, the court finds that the denial of this claim by the state courts was not an unreasonable application of clearly established Supreme Court authority.

F. Biased Panel (Ground Five)

Petitioner argues that the members of the BPH do not reflect a cross-section of society, as required by state law. Petitioner argues that BPH members are biased because they have law enforcement backgrounds.

To the extent petitioner is alleging a state law violation, such a claim is not cognizable in federal habeas. A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir.

1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

        The Supreme Court has reiterated the standards of review for a federal habeas court. Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991). In Estelle v. McGuire, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief. The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68, 112 S. Ct. at 480. The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment). Accordingly, petitioner's state law claim is without merit.

        Turning to petitioner's federal claim, due process requires the state decision makers to be unbiased. See Edward v. Balisok, 520 U.S. 641, 647, 117 S. Ct. 1584, 1588 (1997). However, petitioner does not allege that any member of the 2002 BPH hearing panel was biased against him. The court will not infer from petitioner's claim that because all members of the BPH have a background in law enforcement, they are automatically biased against him. Because this claim is conclusory and unsupported, it is without merit.

        After independently reviewing the record, the court finds that the denial of this claim by the state courts was not an unreasonable application of clearly established Supreme

Court authority.

G. Violation of Plea Agreement (Ground Seven)

Petitioner contends that he pled guilty pursuant to a plea agreement providing that he would be sentenced to 15 years to life. Petitioner argues that when he pled guilty, he believed that he would serve no more than 15 years. Petitioner argues that the BPH's failure to set his maximum term violates his plea agreement and the Eighth Amendment.

Petitioner's claim is confusing. Petitioner admits that his plea agreement provided that he would be sentenced to 15 years *to life*. To the extent petitioner is claiming that he believed that his plea agreement provided that he would receive a determinate sentence of fifteen years, he must file a separate habeas corpus petition raising this claim because it does not involve his 2002 parole hearing. Rather, it challenges the validity of his sentence as opposed to the 2002 decision finding him unsuitable for parole. See Rule 2(e), Federal Rules Governing Section 2254 Cases (a petitioner seeking to relief from judgments of more than one state court must file a separate petition covering the judgment of each court).

Petitioner may be arguing that the BPH's failure to find him suitable for parole has resulted in him serving a sentence that is cruel and unusual. As stated above, petitioner was sentenced to fifteen years to life. The BPH's decision finding petitioner unsuitable for parole in 2002 has not resulted in petitioner serving a sentence longer than 15 years to life. If petitioner believes that his sentence of fifteen years to life is unconstitutional, he must file a separate habeas petition. Id.

After independently reviewing the record, the court finds that the denial of this claim by the state courts was not an unreasonable application of clearly established Supreme Court authority.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 10/30/07

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

burn2019.157