IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN BURNIGHT,

      Petitioner,               No. CIV S-05-2019 MCE CHS P

    vs.

T. CAREY, et al.,

      Respondents.         FINDINGS AND RECOMMENDATIONS

_____/

I.    INTRODUCTION

        Petitioner John Burnight is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the June 14, 2002, decision by the Board of Prison Terms (hereinafter Board) finding him unsuitable for parole.

II.    CLAIMS

        Petitioner makes the following claims[1]:

    A.    The Board violated statutory authority;

---

[1] The petition states seven grounds for relief. Grounds one, three and six each concern petitioner's right to due process. Ground three also contains an argument that the Board's standard is unconstitutionally vague. Grounds one, six and part of ground three will therefore be combined into one due process claim. Petitioner's vagueness argument will be addressed as a separate claim and all the grounds will be reordered for purposes of clarity with the original order within the petition noted.

1

1    B.    The Board's standard was unconstitutionally vague;

2    C.    The Board's decision was a violation of Double Jeopardy;

3    D.    The Board was biased;

4    E.    The Board's determination violated petitioner's plea agreement; and

5    F.    The Board's determination violated petitioner's right to due process.

Upon careful consideration of the record and the applicable law, the undersigned will recommend that this petition for habeas corpus relief be denied.

### III. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Facts

The Board recited the facts of petitioner's commitment offense as follows:

> PRESIDING COMMISSIONER MOORE: It says here, Mr. Burnight, that in the early morning hours you were armed with a sawed-off shotgun. You went to the victim's residence to confront the victim regarding statements allegedly made regarding you fooling around with his girlfriend. Is that accurate so far?
>
> INMATE BURNIGHT: Not completely. Some of - - Most of it, yes.
>
> PRESIDING COMMISSIONER MOORE: Okay. And then it says that you placed - - you had a shotgun with you and you placed it out of sight. And you knocked on the door and you confronted the victim. And an argument ensued and then you retrieved the shotgun and you shot the victim at close range in the neck causing his death.
>
> INMATE BURNIGHT: Mostly accurate, yes.

/////

Answer, Exhibit 2 at 9.

Petitioner's versions of events differs slightly and is as follows:

> INMATE BURNIGHT: Okay. When he got to the front door - - When I went back around to the front door, I confronted him. I asked him why he told Jamie that I was messing around with two other girls at the same time and he turned around and asked me, well, why did you tell Jamie Johnson that I was messing around with this other girl named Rachel and we argued that point. And he basically - - I basically told him that he should have kept his

2

> mouth shut. He should have never told Jamie that and we argued that point. And I told him I should - - you know, if you don't keep your mouth shut maybe I should shoot your f'ing ass and he said, what are you going to do about it. I turned around, I took a couple of steps back to where I set the gun down earlier, came back and pointed it at him. At that point I had my fingers in between both triggers and he said, quit acting crazy. And I said F you and I pushed him in the chest. The same time I pushed him in the chest with it, he came forward to make a grab which surprised me and I jumped back and pulled one of the triggers.

/////

Id. at 10-11.

On January 13, 1993, petitioner pled guilty to second degree murder and was sentenced to a term of 15 years to life on March 22, 1993. Answer, Ex. 1 at 2. On June 14, 2002, the Board held a Subsequent Parole Consideration Hearing for petitioner. Answer, Ex. 2 at 4. At the conclusion of that hearing the Board found petitioner unsuitable for parole. Id. at 57-62.

      B.     State Habeas Review

Petitioner filed a petition for writ of habeas corpus in the Alameda County Superior Court on July 29, 2003. Answer, Ex. 4 at 13. That petition was denied in a short but reasoned opinion on October 3, 2003. Id. at 11. Petitioner then filed a petition with the California Court of Appeal, which was summarily denied on December 18, 2003. Answer, Ex. 5. Petitioner then petitioned the California Supreme Court on January 27, 2004. Answer, Ex. 6 at 3. That petition was summarily denied on February 23, 2005. Id. at 2. Finally, petitioner filed this federal petition on October 6, 2005.

IV.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).[2] Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).[3] Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

---

[2] The reasoned opinion by the Alameda County Superior Court addressed only petitioner's due process claim.

[3] The California Court of Appeal and California Supreme Court summarily denied petitioner's habeas corpus petitions and therefore all his claims other than his due process claim have been decided on the merits but without a reasoned opinion.

4

/////

## V. DISCUSSION OF PETITIONER'S CLAIMS

### A. Violation of Statutory Authority (Petition Ground Two)

#### 1) Description of Claim

Petitioner argues that the Board's use of the "unreasonable risk of danger" standard established a "presumption of unsuitability" in violation of California regulations and was "a misapplication of statutory authority." Petition at 23. He also argues that his denial was based on the Board's no-parole policy. Id. at 24.

#### 2) Applicable Law And Discussion

To the extent petitioner is alleging a state law violation, such a claim is not cognizable in federal habeas. A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton, 768 F.2d at 1085; Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir.1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir.1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir.1986). Habeas corpus cannot be utilized to try state issues de novo. Milton, 407 U.S. at 377.

The Supreme Court has reiterated the standards of review for a federal habeas court. Estelle v. McGuire, 502 U.S. 62 (1991). In Estelle, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief. The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68. The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at 67, citing Lewis v. Jeffers, 497 U.S. 764 (1990), and Pulley v. Harris, 465 U.S. 37, 41 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said

5

error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).  Petitioner's state law claim is therefore not cognizable.

With respect to his argument alleging a no-parole policy, petitioner has failed to provide any facts to support his claim of a "no parole policy."  His argument is vague and conclusory and should be rejected on that basis.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

Upon independent review of the record, the denial of this claim by the state courts was not an unreasonable application of clearly established federal law.

B.    Vagueness (Ground Three)

1)    Description of Claim

Petitioner argues that the "unreasonable risk of danger" standard set forth under California Penal Code § 3041 is vague and unconstitutional.  Petition at 28.  He argues that the standard "has no concrete definition" and is "overbroad."  Id. at 29.

2)    Applicable Law And Discussion

Section 3041(b) provides, in relevant part, that the Board shall set a parole release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration.

Where speech is not the explicit subject of a statute or regulation and is not otherwise implicated in the case, and if related constitutional rights are not expressly invoked in a challenge to facial validity, the court need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute or regulation, the conduct in question is prohibited.  U.S. v. Hogue, 752 F.2d 1503, 1504 (9th Cir.1985).  Under these principles, the reviewing court need not address whether the prohibition may be vague or overbroad in its other potential applications.  Id.  A criminal sanction is not

6

vague if it provides fair notice of the conduct proscribed. Id. A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the rule in question. Id.

Petitioner's argument ignores Cal. Code Regs. tit. 15, § 2402(c) which sets forth the circumstances tending to show unsuitability. Those of significance here are:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>>
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style manner.
>>
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>>
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>>
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

/////

Section 2402(d) sets forth the circumstances tending to indicate suitability:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to the victims.
>
> (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
>
> (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
> (4) Motivation for the Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.
>
> (5) Battered Woman Syndrome ...
>
> (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
>
> (7) Age. The prisoner's present age reduces the probability of recidivism.
>
> (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
>
> (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

The factors stated in § 2402(c) set forth the standards by which the Board determines whether the timing and gravity of the current offense is such that consideration of public safety requires a more lengthy period of incarceration. The Board also uses these factors to determine whether the prisoner would pose an unreasonable risk of danger to society if released from prison. Reading § 3041(b) and § 2402(c) and (d) together, a reasonable person of ordinary intelligence would understand the standards for parole eligibility. The statute at issue is therefore not unconstitutionally vague.

Upon independent review of the record, the denial of this claim by the state courts was not an unreasonable application of clearly established federal law.

8

C. <u>Violation of Double Jeopardy (Ground Four)</u>

    1) <u>Description of Claim</u>

Petitioner argues that by finding him unsuitable for parole, the Board has essentially punished him as if he were guilty of first degree murder in violation of the Double Jeopardy Clause. Petition at 34.

    2) <u>Applicable Law And Discussion</u>

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the state through the Fourteenth Amendment, guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The provision protects against a second prosecution for the same offense and multiple punishments for the same offense. <u>Witte v. United States</u>, 515 U.S. 389, 396 (1995); <u>United States v. Wolfswinkel</u>, 44 F.3d 782, 784 (9th Cir.1995). However, parole is part of the original sentence and decisions concerning parole do not constitute multiple punishments for the original offense. <u>See</u> <u>United States v. Brown</u>, 59 F.3d 102, 104-105 (9th Cir.1995) (per curiam). Petitioner has therefore not been punished in violation of the Double Jeopardy Clause.

The denial of this claim by the state courts was not an unreasonable application of clearly established federal law.

D. <u>Biased Board (Ground Five)</u>

    1) <u>Description of Claim</u>

Petitioner argues that all Board members are from southern California with law enforcement backgrounds. Petition at 39. He argues this is in violation of California Penal Code § 5075 and has resulted in a biased Board. <u>Id.</u>

    2) <u>Applicable Law and Discussion</u>

To the extent petitioner is alleging a state law violation, the claim is not cognizable in federal habeas. A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. <u>Middleton</u>,

9

1  768 F.2d at 1085; Gutierrez,, 695 F.2d at 1197.  It is unavailable for alleged error in the
2  interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln, 807
3  F.2d at 814; Givens, 786 F.2d at 1381.  Habeas corpus cannot be utilized to try state issues de
4  novo.  Milton, 407 U.S. at 377.
5         The Supreme Court has reiterated the standards of review for a federal habeas
6  court.  Estelle v. McGuire, 502 U.S. 62 (1991).  In Estelle, the Supreme Court reversed the
7  decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief.
8  The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly
9  admitted under state law since, "it is not the province of a federal habeas court to reexamine state
10 court determinations on state law questions."  Id. at 67-68.  The Court re-emphasized that
11 "federal habeas corpus relief does not lie for error in state law."  Id. at 67, citing Lewis v. Jeffers,
12 497 U.S. 764 (1990), and Pulley v. Harris, 465 U.S. 37, 41 (1984) (federal courts may not grant
13 habeas relief where the sole ground presented involves a perceived error of state law, unless said
14 error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses
15 of the Fourteenth Amendment).  Petitioner's state law claim is therefore not cognizable.
16        With respect to petitioner's federal claim, due process requires that state decision
17 makers be unbiased.  See Edward v. Balisok, 520 U.S. 641, 647 (1997).  However, petitioner
18 does not allege that any Board member at the 2002 hearing was actually biased against him.  It
19 would be improper to infer that because all members of the Board had a background in law
20 enforcement they were automatically biased against petitioner.  Because this claim is conclusory
21 and unsupported, it is without merit.
22 /////
23     E.    Violation of Plea Agreement (Ground Seven)
24       1)    Description of Claim
25        Petitioner argues that when he pled guilty his understanding was that he "could be
26 sentenced to state prison for a maximum term of 15 years to life . . . ."  Petition at 48.  He argues

1  that he believed he would serve no more than 15 years and that the Board must therefore set his
2  maximum term to 15 years or less. Id.

   2)   Applicable Law And Discussion

4    Petitioner's claim is flawed on its face and illogical. He admits that his plea
5  agreement stated that he would be sentenced to a term of 15 years to life. His maximum term
6  under that agreement would obviously be life in prison. Not only has petitioner not served the
7  maximum term, at the time of the 2002 hearing he had not even served the minimum term of 15
8  years.

9    To the extent petitioner is claiming that he believed that his plea agreement
10  provided that he would receive a determinate sentence of only fifteen years, he cannot raise this
11  claim in this petition, because it does not involve his 2002 parole hearing. Rather, it challenges
12  the validity of his sentence as opposed to the 2002 decision finding him unsuitable for parole.
13  Petitioner cannot challenge his parole decision and underlying state conviction in this action.
14  White v. Woodford, 2008 WL 4628558, at *1 (E.D. Cal. 2008) (citing Rule 2(e), Federal Rules
15  Governing Section 2254 Cases.)

16    To the extent petitioner is arguing that the Board's failure to find him suitable for
17  parole has resulted in his serving a sentence that is cruel and unusual, as stated above, he was
18  sentenced to fifteen years to life. The Board's decision finding him unsuitable for parole in 2002
19  has not resulted in a sentence longer than 15 years to life.

20    The denial of this claim by the state courts was not an unreasonable application of
21  clearly established federal law and petitioner is not entitled to relief on this claim.

  F.   Due Process (Grounds One, Three, Six)

   1)   Description of Claims

24    Petitioner argues that the Board unreasonably relied solely on the circumstances
25  of his commitment offense and presumed that he was unsuitable for parole. Id. at 30, 42-47. He
26  argues that the Board's failure to find him suitable for parole violated his liberty interest in a

11

release date. Id. at 18. Petitioner also argues that the Board's determination was "erroneous" and a violation of his right to due process. Id. at 47.

### 2) State Court Opinion

The Alameda County Superior Court reject petitioner's arguments stating:

> Petition for Writ of Habeas Corpus is denied. The record submitted by petitioner does not support petitioner's contention that the Board of Prison Terms acted illegally, abused its discretion or failed to consider all of the relevant evidence available in reaching its decision to deny petitioner's parole. The nature of the commitment offense and the other factors raised by the members of the Board of Prison Terms at petitioner's parole hearing demonstrate that the Board acted well within its discretion. Since there is "some evidence" in the record before the Board, the petition is denied. In re Rosenkrantz (2002) 29 Cal.4th 616.

/////

Answer, Ex. 4 at 11.

### 3) Applicable Law

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz

v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  In this regard, it is clearly established that California's parole scheme provides prisoners sentenced in California to a state prison term that provides for the possibility of parole with "a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause."  Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; and Allen, 482 U.S. at 377-78 (quoting Greenholtz, 442 U.S. at 12)).  Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case violated due process.

It has been clearly established by the United States Supreme Court "that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

"The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the fact-finder.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the [ ] decision must have some indicia of reliability."  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  See also Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992).  Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any reliable evidence in the record that could support the conclusion reached.  Id.

/////

4) <u>Discussion</u>

While a parole denial based solely on the circumstances of the commitment offense can initially satisfy due process requirements, the continued reliance over time on unchanging factors such as the circumstances of the commitment offense may result in a due process violation. <u>Biggs</u>, 334 F.3d at 916. In <u>Irons</u>, the Ninth Circuit explained that <u>Biggs</u> represents the law of the circuit that continued reliance on a prisoner's commitment offense or conduct prior to imprisonment could result in a due process violation over time. <u>Irons</u>, 505 F.3d at 853. Nevertheless, the court held that, given the egregiousness of the commitment offense, due process was not violated when the Board deemed a prisoner unsuitable for parole prior to expiration of his minimum term. <u>Id.</u> at 846. Likewise, <u>Sass</u> pertained to a prisoner who had not yet served his minimum sentence at the time of the challenged parole. In <u>Sass</u>, the court determined that "evidence of petitioner's prior offenses," along with "the gravity of his convicted offenses" constituted "some evidence" to support the Board's decision. <u>Id</u>. at 1129.

In finding petitioner unsuitable for parole, the Board cited the circumstances of petitioner's commitment offense, stating:

> The offense was carried out in a dispassionate and calculated manner. The offense was carried out in a manner which demonstrates exceptionally callous disregard for human suffering. The motive for the crime was inexplicable and very trivial in relationship to the offense.

Answer, Ex. 2 at 57.

The circumstances of the commitment offense are one of fifteen factors relating to an inmate's unsuitability or suitability for parole under California law. Cal.Code. Regs., tit. 15 § 2402(c)(1)-(d). When denial is based on these circumstances the California courts have stated that:

> A prisoner's commitment offense may constitute a circumstance tending to show that a prisoner is presently too dangerous to be found suitable for parole, but the denial of parole may be predicated on a prisoner's commitment offense only where the Board can "point to factors beyond the minimum elements of the

> crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. [In re] Dannenberg, 34 Cal.4th [1061] at 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005). Factors beyond the minimum elements of the crime include, inter alia, that "[t]he offense was carried out in a dispassionate and calculated manner," that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal.Code. Regs., tit. 15 § 2402(c)(1)(B), (D)-(E)."

/////

Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal.App.4th 570, 588 (2006) (to support denial of parole, the "factors beyond the minimum elements of the crime" "must be predicated on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public safety.")

Such circumstances may include "rehearsing the murder, executing of a sleeping victim, stalking," id., or evidence that the defendant "acted with cold, calculated, dispassion, or that he tormented, terrorized or injured [the victim] before deciding to shoot her; or that he gratuitously increased or unnecessarily prolonged her pain and suffering." In re Smith, 114 Cal.App.4th at 367.

Petitioner walked to the victim's home in the middle of the night armed with a loaded sawed-off shotgun. He concealed the weapon, confronted the victim and engaged in an argument. Petitioner then retrieved the weapon, aimed it at the victim and shot him. At the time of the shooting petitioner considered the victim his "best friend." Answer, Ex. 2 at 37. Arriving at a person's home with a weapon in the middle of the night and then shooting him could be properly characterized as "cold."

With respect to triviality, all murder is trivial to some degree. Therefore for purposes of comparison and to fit the statutory definition the motive must be materially less significant (or more "trivial") than those which typically drive people to commit murder and

15

therefore is more indicative of a risk of danger to society if the prisoner is released than is ordinarily presented. In re Scott, 119 Cal.App.4th 871, 891 (2004).

Petitioner confronted the victim with a loaded sawed-off shotgun because the victim told a girl petitioner was seeing, and who was also the victim's ex-girlfriend, that petitioner was sleeping with other women, which was true. Answer, Ex. 2 at 12. Confronting someone with a deadly weapon, let alone killing them, because they outed the perpetrator as a philanderer is a trivial motive for such actions. Petitioner's own admission was that his actions were "very trivial on my part." Answer, Ex. 2 at 14.

Given the egregiousness of the commitment offense, due process was not violated when the Board deemed petitioner unsuitable for parole prior to expiration of his minimum term.

## VI. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 20, 2009

*/s/ Charlene H. Sorrentino*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

16